IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03272-NRN

L.J.C.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff L.J.C.[1] was not disabled for purposes of the Social Security Act. AR[2] 1037. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #10.

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,*

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ## 9, and 9-1 through 9-15.

500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007). If substantial evidence supports the findings of the Acting Commissioner of Social Security (the "Commissioner") and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Background

### I. Procedural History

Plaintiff filed a claim for Disability Insurance Benefits in January 2015, alleging a disability onset date of September 1, 2012, and alleging disabling conditions of arthritis

in her left ankle and hip, damage to her left knee, flat feet, bunion on her left foot, seasonal allergies, and sciatica. *See* AR 50, 120. The ALJ's first unfavorable decision (AR 12–27) was reversed by Judge Marcia S. Krieger, who remanded the case for a new hearing. *See* AR 1010–17. The remand hearing resulted in an unfavorable decision dated April 9, 2021. AR 1024–47. The ALJ's second unfavorable decision rejected Plaintiff's disability claim, finding that although certain of Plaintiff's impairments were severe, Plaintiff was able to perform certain past relevant work, as well as other jobs in the national economy. *Id.*

## II. The ALJ's April 9, 2021 Decision

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff had the severe impairments of degenerative joint disease of the left ankle and obesity. AR 1029. The ALJ deemed several additional impairments to be nonsevere: left hip and left knee conditions, flat feet, lumbar condition, allergies, vision conditions, and nasal conditions. AR 1030. The ALJ further found that Plaintiff's generalized anxiety disorder and social anxiety disorder were non-medically determinable impairments. Although Plaintiff had sought treatment from a Licensed Professional Counselor ("LPC"), an LPC "is not an acceptable medical source within our Regulations and cannot establish a medically determinable impairment." *Id.*

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

3

Further, the ALJ found that even if Plaintiff's anxiety disorders were medically determinable, they would be nonsevere because "the evidence does not establish more than a 'mild' limitation" in any of the four areas of mental functioning described in 20 C.F.R., Part 404, Subpart P, Appendix 1. AR 1030–31.

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 1032. Because he concluded that Plaintiff did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform a range of sedentary work as defined in 20 CFR 404.1567(a). The claimant could lift or carry 10 pounds occasionally and less than 10 pounds frequently. She could sit six hours, and stand or walk two hours, in an eight-hour workday. She could never operate foot controls with the left lower extremity. She could occasionally climb ramps and stairs. She could not climb ladders, ropes or scaffolds. She could not balance. She could occasionally stoop, crouch, kneel, and crawl. She needed to avoid even moderate exposure to fumes, odors and irritants. She was unable to work around unprotected heights, or around moving or dangerous machinery. She needed to be allowed to elevate her left leg at footstool height as needed. She could occasionally interact with coworkers and supervisors.

AR 1032.

The ALJ also considered opinion evidence from Dr. Jan Dunn and Mr. Gibson. AR 1030, 1034–35. Dr. Dunn indicated that Plaintiff "is able to lift 10 pounds, sit 1 to 2 hours at a time for up to 4 hours in an 8-hour workday, and stand 15 minutes at a time for 1 to 2 hours in an 8-hour workday," and that Plaintiff "must elevate her feet above her heart hourly for 15 minutes." AR 681–82, 1034. The ALJ gave "minimal weight" to the Dr. Dunn's opinion because,

4

> Dr. Dunn's opinion is a check-box type form that cites no objective medical evidence and provides no narrative explanation for the limitations, other than other citing vague "swelling" with regard to the need to elevate feet above the heart. While examinations show some edema, treatment records through the date last insured do not reflect any recommendation to elevate the leg above heart on an ongoing basis. Further, while the claimant's pain reasonably limits her ability to walk, examinations of the claimant do not document findings that support a limitation in her ability to sit, and Dr. Dunn cited no objective basis and provided no explanation for such a limitation. Dr. Dunn's opinion is not consistent with the evidence as a whole. For example, she found that the limitations reflected in the opinion had existed since 2005, yet the claimant worked at the level of substantial gainful activity after that time in positions that exceeded the limitations reflected in the opinion. The claimant does not even allege she became disabled until September 2012, about seven years after the date Dr. Dunn opined was the onset of the assessed limitations. According to Dr. Dunn[], since 2005, the claimant has been unable to work more than 5 to 6 hours per day (i.e., sitting 4 hours, and being on her feet 1 to 2 hours, per 8-hour workday). However, the claimant reported performing jobs after 2005 in which she stood and walked up to 12 hours per day, and sat 8 to 10 hours, all after 2005 (e.g., 23E/1-3).

*Id.* The ALJ gave no weight to two functional capacity evaluations from Mr. Gibson regarding Plaintiff's anxiety disorders because Mr. Gibson, as an LPC, "is not an acceptable medical source, and the limitations reflected in those opinions are not based on a medically determinable impairment." AR 1034. Despite these findings, in formulating the RFC the ALJ gave Plaintiff "a considerable benefit of the doubt and limited her to occasionally interact with coworkers and supervisors." *Id*. at 1035.

Regarding step four, the ALJ found that Plaintiff was capable of performing past relevant work as a customer service representative. AR 1035. Considering Plaintiff's age, education, work experience, and RFC, and in light of the testimony of a vocational expert, the ALJ determined that there were other jobs that exist in significant numbers in the national economy that she could perform, such as appointments clerk, telephone solicitor, and sorter. AR 1036. Accordingly, Plaintiff was deemed not to have been under

a disability from September 1, 2012, the alleged onset date, through December 31, 2016, the date last insured. AR 1037.

## Analysis

Plaintiff argues that the ALJ incorrectly determined that she was not disabled for two reasons. First, she claims that the ALJ did not properly assess Dr. Dunn's opinion in determining Plaintiff's RFC, and did not properly assess Dr. Dunn's opinion as a treating physician under 20 C.F.R. § 404.1527. Second, Plaintiff argues that the ALJ did not properly assess the opinion of Mr. Gibson regarding Plaintiff's mental impairments.

### I. The ALJ's assessment of Dr. Dunn's Opinion

The Court finds that the ALJ did not properly assess Dr. Dunn's opinion as a treating physician under the relevant applicable regulations then in force[4] when formulating Plaintiff's RFC.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). The ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis,

---

[4] As explained further below, the regulations governing the ALJ's evaluation of Dr. Dunn's opinion apply to claims filed before March 27, 2017, and presumptively give significant weight to opinions of treating physicians. *See* 20 C.F.R. § 404.1527(c)(2); *Makeen v. Berryhill*, No. 17-CV-02663-CMA, 2018 WL 3633560, at *5 (D. Colo. July 31, 2018).

6

what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527 (a)(1).

The then-applicable regulations governing the consideration of medical opinions distinguished among "treating" physicians, "examining" physicians, and "nonexamining" (or "consulting") physicians. *See* 20 C.F.R. § 416.1527(c). Generally, "the opinions of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Sorenson v. Bowen*, 888 F.2d 706, 711 (10th Cir. 1989); *see also Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)) ("The treating physician's opinion is given particular weight because of his or her 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'").

An ALJ may make an RFC finding that deviates from a treating physician's opinion, even in the absence of a conflicting medical opinion. *Berumen v. Colvin*, 640 F. App'x 763, 767 (10th Cir. 2016). However, "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. Further, "in choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments,*

7

*speculation or lay opinion.*" *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation omitted); *see also Langley*, 373 F.3d at 1121.

The Court first considers whether the ALJ offered sufficient reasoning to support the RFC finding which deviated from Dr. Dunn's opinion. Dr. Dunn's opinion stated that Plaintiff was able to sit up to four hours in an eight-hour workday, while the ALJ's RFC stated that Plaintiff could sit up to six hours. AR 1032, 1034. Dr. Dunn's opinion stated that Plaintiff needed to lift her feet above her heart for fifteen minutes every hour, while the ALJ's RFC stated that Plaintiff must "elevate her left leg at footstool height as needed." AR 1032, 1034. Accordingly, the ALJ was required to explain what led him to adopt an RFC that deviated from Dr. Dunn's opinion in these ways. *See Benavidez v. Colvin*, 650 F. App'x 619, 621 (10th Cir. 2016) ("[A]n ALJ cannot, without explanation, adopt some restrictions assessed by a physician and reject others that the physician also assessed."). Regarding the sitting limitation, while the ALJ explains certain reasons why he affords Dr. Dunn's opinion "minimal weight" *as a whole*, he does not explain, and the Commissioner does not argue, why in particular the RFC's sitting limitation is two hours longer than in Dr. Dunn's opinion. Regarding the elevation issue, the Commissioner argues that "the ALJ reasonably accepted that some leg elevation was needed but not the extremes of Dr. Dunn's opinion," and notes that another doctor "recommended elevation, but did not say what level." Dkt. #14 at 14. But the Commissioner points to no evidence in the record supporting the idea that footstool-heigh elevation, as opposed to "above the heart" elevation, is appropriate. Nor does the Commissioner explain why it would be acceptable for the ALJ to inexplicably "split the difference" by modifying the limitations in Dr. Dunn's opinion *in the absence of a*

8

*conflicting medical opinion*. *See, e.g., Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) (holding ALJ did not err in adopting an RFC with a greater restriction than one doctor's opinion but a lesser restriction than another doctor's opinion). This is no minor deviation. Putting a leg or foot on a footstool is obviously different than requiring that a leg be elevated above heart level. A person in a seated position could plausibly elevate a foot on a footstool. By contrast, someone required to elevate a foot or leg above heart level would likely be required to lie down. And the length of time recommended (15 minutes every hour) would tend to preclude that person from doing certain kinds of work that could otherwise be accomplished by a person in a seated position, such as "sorter."

Accordingly, the Court finds that the ALJ failed to provide adequate reasoning in formulating the RFC.

The Court additionally finds that the ALJ failed to comply with the requirements of 20 C.F.R. § 404.1527 in weighing Dr. Dunn's opinion as a treating physician. Because Plaintiff's claim predates March 27, 2017, the ALJ's evaluation of opinion evidence from a treating physician must comport with 20 C.F.R. § 404.1527. This regulation requires a sequential, two-step analysis. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). First, the ALJ must determine whether the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," and if so, must afford the opinion "controlling weight." *See id.*; 20 C.F.R. § 404.1527(c)(2). If the ALJ determines that the opinion is not entitled to controlling weight, the ALJ should next apply the following six factors to determine how much weight to give the treating physician's opinion:

9

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011). The ALJ need not "apply expressly" each of the six factors, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.2007), but "the record must reflect that the ALJ *considered* every factor in the weight calculation." *K.L.M. v. Kijakazi*, No. 21-cv-00978-JLK, 2023 WL 2018903, at *7 (D. Colo. Feb. 15, 2023) (citing *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009)); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 . . . ." (internal quotations and citation omitted)). If the ALJ's decision fails to "give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned," a remand is required. *Watkins*, 350 F.3d at 1300.

In this case, the Court notes that the ALJ decision never expressly recognizes Dr. Dunn as a treating physician, and it is therefore not apparent whether the ALJ attempted to comport his analysis of Dr. Dunn's opinion with the 20 C.F.R. § 404.1527 requirements. *C.f. Henry v. Colvin*, No. 2:12-cv-00047, 2013 WL 820344, at *2 (D. Utah Mar. 5, 2013) (holding that ALJ committed legal error where physician treated claimant for four months, and ALJ stated that physician was an examining physician). Nevertheless, because the ALJ did not affirmatively misidentify Dr. Dunn as an

10

examining or consulting physician, the Court will assume that the ALJ was aware of Dr. Dunn's status as a treating physician, and will evaluate whether the ALJ correctly applied the weighing regulation to Dr. Dunn's opinion.

Regarding the first step of the analysis, the ALJ did not give Dr. Dunn's opinion controlling weight because the decision states that the ALJ gave Dr. Dunn's opinion "minimal weight" and no "significant weight," and found that the opinion was "not consistent with the evidence as a whole." AR 1034. Regarding the second step of the analysis, the ALJ's decision does not show that the ALJ considered factors one and two when determining what weight to afford Dr. Dunn's opinion.[5]

Factors one and two require consideration of the length, nature, and extent of the treatment relationship between Plaintiff and Dr. Dunn, as well as the frequency of examination. *Krauser*, 638 F.3d at 1331. The record indicates that Dr. Dunn provided Plaintiff with care on at least nine occasions from December 2015 through September 2016. AR 499–538. The Commissioner argues that the ALJ "cited to Dr. Dunn's treatment records, which demonstrates he was aware of the treatment relationship and the length of treatment." Dkt. #14 at 16–17. But it is not clear that the ALJ ever actually referenced Dr. Dunn's treatment records when considering the weight to afford Dr. Dunn's opinion. While the ALJ referenced "examinations" and "treatment records" in his

---

[5] The Court notes that the application of factor five (physician specialty) is not dispositive in this case, as specialization is only relevant insofar as the ALJ should "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 404.1527(c)(5). The record reflects that Dr. Dunn practices in the areas of family medicine and primary care. AR 600–01. Plaintiff does not argue that any relevant medical issues are uniquely related to these practice areas.

11

discussion of Dr. Dunn's opinion, *see* AR 1034,[6] it is not evident that in doing so he is referencing examinations or treatment from Dr. Dunn, or from some other source. And even if we assume that these statements referred to Dr. Dunn's examinations and treatment, cursory reference to such records is not sufficient to demonstrate that the ALJ considered the length, nature, and extent of the treatment relationship. *See Andersen*, 319 F. App'x at 426.

The ALJ's evaluation of Dr. Dunn's opinion appears to rest solely on factors three and four—the degree to which Dr. Dunn's opinion was supported by relevant evidence and its consistency with the record as a whole. The ALJ stated that Dr. Dunn's opinion was a "check-box type form that cite[d] no objective medical evidence and provide[d] no narrative explanation for the limitations," that treatment records did not reflect a recommendation that Plaintiff elevate her leg above her heart on an ongoing basis, that examinations did not support a sitting limitation, and that Dr. Dunn inconsistently found that Plaintiff's limitations existed since 2005 while Plaintiff reported performing jobs after that date in which she exceeded these limitations. AR 1034. However, consideration of supportability and consistency alone are not sufficient reasons to discount a treating physician's opinion. And although one factor "might prove determinative, that can only be decided after consideration of the other factors." *See Andersen*, 319 F. App'x at 722

---

[6] In particular, the ALJ stated that "[w]hile *examinations* show some edema, *treatment records* through the date last insured do not reflect any recommendation to elevate the leg above heart on an ongoing basis. Further, while the claimant's pain reasonably limits her ability to walk, *examinations* of the claimant do not document findings that support a limitation in her ability to sit . . . ." AR 1034 (emphasis added). Although the Commissioner argues that the ALJ decision cited to portions of Dr. Dunn's treatment records, Dkt. 14 at 16–17, the Court cannot decipher a connection between the ALJ's statements and Dr. Dunn's progress notes on May 13, 2016 and December 7, 2015. *Compare* AR 1034, *with* AR 516, *and* AR 538.

(finding ALJ reasoning to be insufficient where ALJ failed to consider any factor other than supportability).

Accordingly, the Court finds that the ALJ committed reversible error with respect to his treatment of Dr. Dunn's opinion by failing to provide adequate reasoning in formulating the RFC (which failed to provide reasoning as to why the elevation and sitting limitations of Dr. Dunn's opinion were not adopted) and failing to properly apply the applicable weighing regulation.

## II. Remaining Issues

The Court "address[es] only so much of Plaintiff's arguments as are sufficient to require reversal." *See Cross v. Colvin*, 25 F. Supp. 3d 1345, 1348 n.1 (D. Colo. 2014). The Court expresses no opinion as to Plaintiff's remaining argument, and neither party should take the Court's silence as implied approval or disapproval of the arguments. *See Watkins*, 350 F.3d at 1299 (reversing and remanding after concluding the ALJ did not apply the correct legal standards in considering a treating physician's opinion, and declining to consider remaining issues raised by the claimant "because they may be affected by the ALJ's treatment of this case on remand"). The Court also does not suggest a result that should be reached on remand; rather, the Court encourages the parties, the ALJ, and the Commissioner on remand to consider fully and anew the evidence and all issues raised. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.") (citation and quotation marks omitted).

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

Dated this 3rd day of October, 2023.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge